IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 05-38-SLR |
| | : | |
| TYRONE WILLIAMS, | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT'S PRE-TRIAL MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

Defendant, Tyrone Williams, through undersigned counsel, Penny Marshall, hereby moves for the suppression of all evidence obtained as a result of the unlawful search of his person and his vehicle, on or about March 17, 2005, including all of Mr. Williams' statements to law enforcement officers, that the government intends to introduce at trial. Defendant submits that he was stopped by police in violation of the Fourth Amendment of the Constitution of the United States.

In support of this motion the defense submits as follows:

1.  On March 17, 2005, an anonymous 911 caller reported to police that two black men, who were not from the neighborhood, had been sleeping in a gray Dodge Intrepid, license plate number DE772602, in front of 1019 Elm Street, Wilmington, Delaware for an hour and a half.

2.  The police dispatcher reported the call over police radio at 7:54 a.m., and Officer

Ronald Muniz arrived at the scene first.

3.      According to a report that Officer Muniz filed on March 22, 2005, as he passed the vehicle with the license number reported outside 1019 Elm Street, the two black men observed in the car were talking and moving about in the vehicle.    The two men were not observed committing any law violations. Despite this,  Mr.  Williams, the driver of the car,  was required to produce identification, to get out of the car and was interrogated by police.

4.      Initially, Mr. Williams was not read his <u>Miranda</u> rights. It was only after Mr. Williams already had made incriminating statement pursuant to questioning that he was advised of his <u>Miranda</u> rights.

5.      The defense contends that the police seized Mr. Williams' person in violation of the Fourth Amendment, and that this Court must accordingly exclude the gun and the ammunition retrieved from his vehicle, as well as the statements made to law enforcement officers, from these proceedings.

6.      According to <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), and its progeny, under the Fourth Amendment, a police officer "may conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." <u>Illinois v. Wardlow</u>, 528 U.S. 119, 123 (2000) (citing <u>Terry</u>, 392 U.S. at 30).  The Constitution requires that the officer have the ability to articulate his particularized suspicion that the suspect is engaged in criminal activity; he may not base his seizure of the suspect on a hunch.  <u>Terry</u>, 392 U.S. at 27.

7.      In <u>Terry</u>, the Court initially determined that a suspect has been "seized" within the meaning of the Fourth Amendment when a police officer "restrains his freedom to walk away."  <u>Id.</u> at 16.  It explained further in <u>U.S. v. Mendenhall</u> that if, under the circumstances, a

reasonable person would not have felt that he was "free to leave," he has been "seized." Examples of such circumstances include, according to the Court, "the threatening presence of several officers," "or the use of language or tone of voice indicating that compliance with the officer's request might be compelled," among others. 446 U.S. 544, 554 (citing Terry, 392 U.S. at 19, n.16; Dunaway v. New York, 442 U.S. 200, 207 (1979)). See also California v. Hodari D., 499 U.S. 621, 628 (1991) (reasonable suspicion required for a stop when a reasonable person would not feel free "to disregard the police and go about his business"). The Court refined its analysis in Florida v. Bostick, 501 U.S. 429, 439 (1991), by determining that if a reasonable person does not believe, in light of all circumstances attendant to the encounter with police, that he is "free to decline the officers' requests or otherwise terminate the encounter," he has been seized.

8.     At the point when Officer Muniz directed Mr. Williams and his passenger to keep their hands in their laps and requested back-up over the police radio, they were clearly not free to disregard the officer's request or terminate the encounter. They knew that Officer Muniz believed they were dangerous, and that several more officers had been called to the scene.

9.     The seizure of the two men was not supported by the reasonable suspicion required for a Terry stop. See Terry, 392 U.S. at 30.

10.     An anonymous telephone tip may only provide reasonable suspicion for an investigatory stop if it "exhibit[s] sufficient indicia of reliability." Alabama v. White, 496 U.S. 325, 326. The tip is evaluated in light of the totality of the circumstances. Id. at 330. An anonymous tip, on its own, will rarely provide an indication of the caller's honesty or reliability. Id. at 329. However, when independent police investigation corroborates significant details that

the tipster has provided, especially when those details are predictive in nature, the tip gains

enough reliability to justify the stop.  Id. at 332 (citing Illinois v. Gates, 462 U.S. 213, 245

(1983)).

11.    In Florida v. J.L., 529 U.S. 266, 268 (2000), police received an anonymous tip

that a young black man in a plaid shirt was at the bus stop with a gun.  The Court, noting that the

police had no further incriminating or suspicious information about the man, even after observing

him, declared that the tip lacked the standard indicia of reliability that would have supported a

legitimate stop.  Id.  It simply provided "[a]n accurate description of a subject's readily observable

location and appearance," which is useful solely in identifying the particular person to whom the

tipster refers, id. at 272, but provided none of the predictive information relied upon in Gates and

White to test the knowledge or credibility of the informant.  Id. at 271.

12.    The Third Circuit applied this framework in U.S. v. Roberson, determining that an

anonymous tip alone, reporting "only information readily observable at the time the tip is made,"

is insufficient justification for a Terry stop if police investigating the tip observe no suspicious

conduct.  90 F.3d 75 (3d. Cir. 1996).  In Roberson, an anonymous 911 caller described in detail a

man whom he believed to be selling drugs on a particular corner, but when police arrived and

found a man matching the description, although they could see "the butt of a gun protruding from

his pants," they observed no activity suggestive of drug activity.  Id. at 76.  The only details that

police corroborated were "conditions presumably existing at the time of the call."  Id. at 79

(quoting Alabama v. White, 496 U.S. at 332).

13.    The 911 caller in the instant case simply reported what he observed at the time

of the call – that two black men were sleeping in a gray Intrepid in front of 1019 Elm Street.  The

tip contained no predictive information, and Officer Muniz could not even corroborate the caller's description of what he observed. Furthermore, the tip contained no information indicating a crime had occurred or was about to occur. The tip bore none of the standard indicia of reliability which would support the reasonable suspicion required to justify the stop.

14.    Officer Muniz observed no other suspicious conduct which would indicate that criminal activity was afoot at the scene before he effectively seized Mr. Williams and his passenger by ordering them to place their hands in their laps and calling for additional officers.

15.    Because Officer Muniz lacked reasonable suspicion to seize the two men, he also lacked the authority to frisk Mr. Williams. See Terry, 391 U.S. at 20 ("in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion").

16.    Because the evidence was seized as a result of an illegal stop, the "fruit of the poisonous tree doctrine" mandates that it be excluded from these proceedings. See Wong Sun v. U.S., 371 U.S. 471 (1963).

17.    Mr. Williams' incriminating statements to law enforcement officers at the police station are inadmissible under the same analysis. It cannot be argued that the connection between the statements and the stop had "become so attenuated as to dissipate the taint," id. (quoting Nardone v. U.S., 308 U.S. 338, 341 (1939)), by the time of his arrival at the police station, because the stop resulted in the search that produced the gun and ammunition, which provided the basis for the arrest. The police interrogated Mr. Williams pursuant to his unlawful arrest.

18.    Even if Officer Muniz had lawfully stopped Mr. Williams, and then observed suspicious conduct that warranted a limited search of his outer clothing under Terry, the seizure

of the gun was unlawful.  Terry authorizes an officer to conduct such a search in order to detect weapons that pose a threat to himself and to others nearby.  392 U.S. at 30.  However, it must be immediately apparent to the officer who pats down the suspect, without further manipulation of the suspect's outer clothing or removal of the object from the clothing, that the object is a weapon or an immediately identifiable type of contraband.  Minnesota v. Dickerson, 508 U.S. 366, 378-379 (1993).  Instead, Officer Hazzard informed Officer Muniz that he felt a heavy object, and removed it from Mr. Williams' pocket to discover that it was a gun.  The fruit of the poisonous tree doctrine would still require that the evidence and statements obtained from Mr. Williams be deemed inadmissible at trial.

19.    The facts of this case will show that the police unlawfully seized Mr. Williams, that the subsequent search of his person and his vehicle were likewise unlawful, and that the evidence and statements obtained from Mr. Williams as a result of the unlawful stop must be suppressed.  In addition, even if the government establishes that the stop was lawful, the frisk of Mr. Williams' person exceeded the scope of a lawful search pursuant to a legitimate stop, and the evidence should nonetheless be suppressed as fruit of the illegal search.

20.    The statements obtained from Mr. Williams also were obtained in violation of his Fifth and Sixth Amendment Rights and without a knowing and intelligent waiver.  Mr. Williams contends that the statements made after his arrest were not knowing and voluntary nor made in compliance with Miranda v. Arizona, 384 U.S. 436, 475 (1966).

**WHEREFORE**, the defense respectfully requests that this Court conduct a hearing to further develop the facts related to this motion and subsequently enter an order to suppress the evidence as discussed above.

Respectfully submitted,

/S/
Penny Marshall, Esquire
Federal Public Defender
First Federal Plaza
704 King Street, Suite 110
Wilmington, DE 19801
(302) 573-6010
Attorney for Defendant Tyrone Williams

DATED:      June 8, 2005

## CERTIFICATE OF SERVICE

The undersigned attorney for defendant hereby certifies that the attached Motion to

Suppress is available for public viewing and downloading and was electronically delivered on June

8, 2005, to:

Richard G. Andrews
First Assistant United States Attorney
1007 Orange Street, Suite 700
Wilmington, DE   19899-2046

/S/
Penny Marshall, Esquire
Federal Public Defender
First Federal Plaza
704 King Street, Suite 110
Wilmington, DE  19801
(302) 573-6010
Attorney for Tyrone Williams

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 05-38-SLR |
| | : | |
| TYRONE WILLIAMS, | : | |
| | : | |
| Defendant. | : | |

## **ORDER**

Having considered Defendant's Pre-trial Motion to Suppress Evidence and Statements**,**

**IT IS HEREBY ORDERED** this _____ day of June  that all statements and evidence

seized by Mr. Tyrone Williams is hereby SUPPRESSED.

_____

Honorable Sue L. Robinson
Chief Judge, U.S. District Court