

**U.S. Department of Justice**

*United States Attorney's Office*
*District of Delaware*

---

*Nemours Building*  *(302) 573-6277*
*1007 Orange Street, Suite 7100*  *FAX (302) 573-6220*
*P.O. Box 2046*
*Wilmington, Delaware 19899-2046*

September 30, 2005

Honorable Sue L. Robinson
Chief Judge
United States District Court
J. Caleb Boggs Federal Building
844 King Street
Wilmington, Delaware   19801

    Re:  **United States v. Tyrone Williams**
          **Criminal Action No.   05-38-SLR**

Dear Chief Judge Robinson:

    This is the Government's Reply Letter in connection with the Defendant's Motion to Suppress.

    First, the Defendant does not correctly understand what *Pennsylvania v. Mimms*, 434 U.S. 106 (1977)(per curiam), stands for, and misstates what the Government cites it for.  *See* Defendant's Response (D.I. 18), at pp. 11-12.  The sequence of facts in *Mimms* was: (1) the defendant is in a car and is stopped for a traffic violation; (2) the officers approached, and asked him to get out of the car; and (3) after he got out of the car, the officers saw a large bulge under his sports jacket.  On this sequence of facts, the Supreme Court resolved two legal issues: (1) holding that the officers could order him out of the car based on the fact that he had been stopped for a traffic violation; and (2) holding that they could search him based on the large bulge, and nothing more.  The sequence of facts in the present case is different: (1) the officer approaches, and sees the bulge and the twisting away; and (2) after some intervening conversation and actions, the officer orders the Defendant to get out of the car.  The Defendant's Response quotes *Mimms* in relation to the first legal issue, but the ordering of the Defendant to get out of the car is not the same in the two cases.  In *Mimms*, the only reason to order him out of the car related to the fact that he had been stopped for a traffic violation.  The Court held that the police could do that once they had legitimately stopped him for a traffic violation.  In the present case, there was no traffic violation; instead, the officer's observations gave reasonable suspicion to believe the Defendant was armed, and Corporal Muniz ordered him out of the car so that he could conduct the patdown search.  Tr.21.

Honorable Sue L. Robinson
September 29, 2005
Page  2

Re:  Tyrone Williams

---

Second, the Defendant does not address the significance of the Defendant's violation of state law.[1] Once there was reasonable suspicion that the Defendant had a weapon, that reasonable suspicion not only justified a patdown search, but it also justified other restraint on the Defendant while the crime of carrying a concealed deadly weapon was investigated.  If the Court credits Corporal Muniz's testimony about what he saw as he approached the car  – a bulge in the Defendant's pocket and the Defendant's turning away from Corporal Muniz – then Corporal Muniz had a reasonable suspicion that the Defendant was committing a crime.

Third, the Defendant refutes an argument that the Government did not, and does not, make.  The Defendant talks about the race of the Defendant and the other person in the car with him.  *See* Defendant's Response (D.I. 18), at p. 10.[2]  The Government does not, and has not, argued that the race of the Defendant makes any difference to anything in this case.

Fourth, the Defendant would resolve credibility issues against the Government's witness.  Of course, credibility issues are uniquely the province of the Court, as fact-finder, to make, but the Government respectfully suggests that credibility issues should be resolved in favor of Corporal Muniz. The Government notes, among other things, that Corporal Muniz fully documented what happened the same day in his police report.  *See* DX-1.  Further, the Government notes that the only witness – Mr. Hardison –  who offered any contradictory testimony, is essentially the Defendant's lifelong friend, Tr.79, who denied any knowledge that the Defendant had a gun, or that a gun had been found, Tr. 80, which not even the Defendant denied.  *See* DX-2 (videotape, on which the Defendant says, "I just explained to you why I had that gun.").  Mr. Hardison seemed prone to exaggeration, stating that six police cars in addition to Corporal Muniz were at the scene, Tr. 74, whereas the Dispatch Records (GX-3) show Corporal Muniz and three other "units."  To the extent the Defendant relies upon his own video-taped statement, there is evidence the Defendant is not an honest man – according to Mr. Hardison, the Defendant told Corporal Muniz he did not have a gun.  Tr. 82.

Fifth, the Defendant argues that he was seized, *see* Defendant's Response (D.I. 18), at pp.8-9, without specifying exactly when he was seized, although he appears to suggest it was when Corporal Muniz asked him to roll down the window.  The Government agrees that he was seized, but disagrees that it occurred then.  The Government suggests that the seizure occurred when Corporal Muniz told

---

[1] As noted in the Government's Opening Letter Memo, Corporal Muniz's reasonable suspicion that the Defendant had a gun in his pocket would also constitute reasonable suspicion that the Defendant was committing a felony under Delaware law, namely, Carrying a Concealed Deadly Weapon. *See, e.g., Bodan v. State*, 622 A.2d 1094 (table), 1993 WL 61679 (Del. Supr. 1993) (elements of offense are: "1) the weapon was carried 'upon or about' the defendant's person; 2) the weapon was a deadly weapon; 3) the weapon was concealed; and 4) defendant had knowledge of the presence of the weapon on his person.").

[2] The Defendant was the one who asked Corporal Muniz about the race of the people who lived in the area.

Honorable Sue L. Robinson
September 29, 2005
Page 3

Re: Tyrone Williams
_____

the Defendant to get out of the car. The Government also suggests that the exact moment of seizure is irrelevant, since Corporal Muniz's observations before he asked for the window to be rolled down provided a basis for a seizure. The only way the Defendant can be right about the moment of seizure is if the Court disbelieves Corporal Muniz's testimony, because Corporal Muniz's testimony makes it clear that the only show of authority that he demonstrated was the wearing of the uniform and the arrival at the scene in a police car. Corporal Muniz did not park his car to block the Defendant's car. Tr. 9,36 ("I didn't impede their exiting."). He did not draw his gun. Tr.23. He did not have his siren and lights on. Tr.35. When he asked to have the window rolled down, the Defendant rolled down the window. *Compare Johnson v. Campbell*, 332 F.3d 199, 206 (3d Cir. 2003)(seizure occurred when police officer asked driver to roll down window, driver declined, and police officer asked again, making it clear he had no choice in the matter). The interaction between the Defendant and Corporal Muniz continued in a non-coercive manner for a brief period of time.

Sixth, the Defendant relies upon GX-3 (the dispatch records) to claim that multiple police cars arrived at the scene simultaneously. While it is true that the dispatch records appear to show multiple police vehicles arriving simultaneously, testimony showed that the records are not accurate in that regard. Corporal Muniz testified that he was there by himself, and the other vehicles arrived after he requested backup. Tr.20. Mr. Hardison testified that he saw another police officer approach the car about two minutes after Corporal Muniz did so, Tr. 81, which makes no sense if all the police arrived simultaneously. In addition to the testimony, it also defies logic that multiple police vehicles would all be sent to one location for nothing more than a suspicious car complaint, and then show up simultaneously.[3]

Seventh, the Defendant's Response (D.I. 18), at p.14 n.11, states that nervousness cannot be a factor in reasonable suspicion. The Defendant did show signs of nervousness. Tr.47. The vague answers the Defendant gave (i.e., the car belonged to his boy's friend, he was helping his boys move, pointing up the street) were consistent with evasiveness. One of the factors that can go into a "reasonable suspicion" determination is "nervous behavior and evasiveness." *Johnson v. Campbell*, 332 F.3d at 206.

_____

[3] The records themself show that in some regards they cannot be accurate. They show four units being sent to the scene. Corporal Muniz (171E) is dispatched at 7:54 a.m., and arrives a little more than twenty minutes later, at 8:16 a.m. According to the records, two other units (16E and 17E) are dispatched a few seconds before Corporal Muniz arrives at the scene, and Corporal Hazzard (17E) arrives at the scene seven seconds after he was dispatched. Officers Russo and Satterfield (16E) are shown to arrive about six minutes after they are dispatched. Meanwhile a K-9 unit (K92) was dispatched twelve seconds after Corporal Muniz arrived, and took all of twenty seconds to arrive. The records are consistent with Corporal Muniz's testimony that he responded to the complaint, and got there first, and that Corporal Hazzard arrived second. Since the records are called a "Radio Log," it would seem apparent that they reflect the time the events are reported by "radio," not necessarily the time when the events actually happened.

Honorable Sue L. Robinson
September 29, 2005
Page 4

Re: Tyrone Williams

---

Eighth, the Defendant's Response (D.I. 18), at p.15-16, argues that Corporal Muniz was lying when he said he saw a bulge, or, alternatively, that he did not describe it sufficiently. The answer to either argument is essentially the same: the record makes clear that Corporal Muniz believed the Defendant might be armed. He kept the situation low-key until he knew he had back-up. Tr. 20-21. He then asked if the Defendant had a weapon, Tr.21,82, which would be a strange question to ask without some basis to believe it was a possibility. When he took the Defendant out of the car, he indicated to Officer Hazzard which side to pat down. Tr.23. Corporal Muniz clearly believed the Defendant might be armed. Of course, his subjective belief, standing alone, is insufficient. A police officer has be able to "articulate specific reasons," *Johnson v. Campbell*, 332 F.3d at 206, in order to seize a person. In this case, Corporal Muniz's testimony and his behavior at the scene show that the bulge he saw was the sort of bulge that could indicate the presence of a weapon. Together with the other things he saw and heard, he had "specific reasons" for believing the Defendant might be armed, and therefore was justified in conducting a pat-down search.

Wherefore, for the reasons stated above, as well as those advanced in the Government's Letter Memo dated September 1, 2005 (D.I. 17), the United States respectfully requests that the Court deny the Motion to Suppress.

                                              Respectfully submitted,

                                              COLM F. CONNOLLY
                                              United States Attorney

                                           By:    /s/
                                              Richard G. Andrews
                                              First Assistant United States Attorney

pc: Penny Marshall, Esquire
     Clerk, U.S. District Court